## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CYNTHIA M. RAY,**

      **Plaintiff,**

                                    **Civil Action 2:20-cv-127**
                                      **Judge James L. Graham**
      **v.**                          **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Cynthia M. Ray ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 7).  For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.  BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income benefits on October 9, 2015, alleging disability beginning June 6, 2015.  (R. at 191-204.) Plaintiff's claim was denied initially and upon reconsideration.  (R. at 138-144, 146-150.)  Upon request, a hearing was held on April 26, 2018, in which Plaintiff, proceeding without the

assistance of counsel,[1] appeared and testified. (R. at 37-77.) A vocational expert ("VE"), Bruce Growick, also appeared and testified at the hearing. (*Id*.) On November 23, 2018, Administrative Law Judge Jeannine Lesperance ("the ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 16-36.) On November 5, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. RELEVANT HEARING TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff testified at the April 2018 administrative hearing. (R. at 54-65.) Plaintiff testified that she did not currently have a source of income, and was supporting herself through donations from others and public benefits such as food assistance and a medical card. (R. at 55-56.) Plaintiff estimated that she had been without insurance from November 2015 to January 2016. (R. at 56.) Plaintiff testified that she had a driver's license, and although she usually got people to drive her places, she drove her car approximately once per month. (R. at 56-57.)

Plaintiff testified that she had earned a degree as a Practical Nurse. (R. at 57.) She testified that, after June 6, 2015 (the date from which she alleges being disabled), she took leaves of absence from a job, including leave under the Family Medical Leave Act, but she didn't actually go to work during that time and was ultimately terminated. (R. at 57-58.) Plaintiff testified that she previously had worked for Embassy Bryden Place, a skilled nursing facility, as a "medical records person." (R. at 58.) Plaintiff testified that in this role, she had to file records,

---

[1] At the outset of the April 2018 administrative hearing, the ALJ advised Plaintiff that she had the right to be represented by an attorney or other representative, and that a representative might be able to help Plaintiff develop the strengths and weaknesses of her claim. (R. at 40-42.) After being so advised, Plaintiff waived her right to counsel at the hearing. (R. at 42-43.)

and had to lift boxes up to fifty pounds.  (*Id.*)  Plaintiff testified that in this role, she was on her feet for most of the day, approximately six to eight hours a day.  (*Id.*)  Plaintiff also testified that she also had worked at various other nursing homes.  (R. at 59.)  In each instance, Plaintiff testified that she worked as a Licensed Practical Nurse, and her job responsibilities included lifting and transferring patients.  (*Id.*)

When asked what she thinks prevents her from being able to work, Plaintiff testified that she has hearing loss and extreme pain in both ears, which can affect the right side of her face, and that she has difficulty with concentration, neck pain, shoulder pain, and extreme cramping in her hands, legs, and extremities.  (R. at 60.)  Plaintiff also testified that within the last month she had been diagnosed with high blood pressure.  (*Id.*)  Plaintiff testified that lifting or moving is very painful for her, and if she does that kind of work for an hour then she will have to rest for at least three or four hours.  (*Id.*)  Plaintiff testified that when she has ear pain, she also has radiating headaches, which makes it hard to concentrate and can cause numbness or pain to her face.  (*Id.*)  Plaintiff testified that she also has arthritis, which causes hip and knee pain, and that she inexplicably gained thirty pounds within a three-month period.  (R. at 60-61.)  Plaintiff testified that her doctors had performed several tests but they could not find the source of her ear pain or headaches.  (R. at 61.)  Plaintiff testified that she takes a variety of medicine, and that her depression medicine has helped provide some relief.  (*Id.*)

Plaintiff testified that she is able to do "very little" around the house, because she can only do things for approximately fifteen minutes at a time.  (R. at 62.)  Plaintiff testified that she does her shopping or meal preparation on her own, with lots of breaks, and that she goes to church.  (R. at 62-63.)  Plaintiff testified that she has probably had depression for her entire life, and that being terminated from all of her jobs for work performance has only contributed to her

depression and anxiety.  (R. at 63.)  She testified that she has been on depression medication for "most of [her] life," and that she stopped taking those medications for a period of time but "probably should have been on them," so she started taking them again within the past year.  (R. at 63-64.)  Plaintiff testified that she had tried to fight her mental pain for her entire life, and that physically she was "not functioning like a person [her] age . . . should be functioning."  (R. at 64.)  Plaintiff testified that her concentration, depression, and anxiety "had contributed to every job being a termination," and noted that she had never walked away or resigned from a job.  (R. at 65.)

B.     **Vocational Expert's Testimony**

Mr. Bruce Growick testified as the VE at the administrative hearing.  (R. at 65-73.) Based on Plaintiff's age, education, and work experience and the residual functional capacity ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could perform the following jobs that exist in significant numbers in the national economy:  office clerk and work order clerk.  (R. at 69-70.)

### III.  RELEVANT RECORD EVIDENCE

A.     **Benjamin Radcliffe, M.D.**

On May 10, 2016, Plaintiff was evaluated by Benjamin Radcliffe, M.D., upon referral by the Opportunities for Ohioans with Disabilities, for an evaluation relating to her claim for disability benefits.  (R. at 399-405.)  Plaintiff presented with a chief complaint of "[h]eadaches and hearing loss," and Dr. Radcliffe noted that she was seeking disability "secondary to severe chronic headaches and loss of hearing in her right ear."  (R. at 399.)  Plaintiff reported that the headaches "have been debilitating and depressing," and that despite extensive diagnostic tests there was no diagnosis.  (*Id.*)  Plaintiff also complained of right shoulder and right knee pain.

(*Id.*)  Plaintiff told Dr. Radcliffe that "she is able to do most activities of daily living but [] says it is very difficult for her to do things like combing her hair and getting dressed or lifting anything above the level of her shoulder is very difficult because she has such significant pain in her right shoulder."  (*Id.*)  Plaintiff also reported having headaches "most days."  (*Id.*)  Plaintiff reported "feeling down most days and having decreased energy and having a depressed mood," but denied suicidal ideations.  (*Id.*)

Dr. Radcliffe noted that Plaintiff "is in no obvious distress," and observed that "[s]he has difficulty with heel toe walking due to her right knee pain and some balance issues."  (R. at 400.) Dr. Radcliffe reported that Plaintiff had limitations in range of motion of her right shoulder and right knee, and that her "[c]ranial nerves are grossly intact with obvious diminished function of cranial nerve VIII on the right."  (*Id.*)  Dr. Radcliffe also observed that Plaintiff "walks upright with a limp favoring her right lower extremity, holds onto things when she turns, [and] does have a bit of a wide stance and shuffles."  (R. at 401.)

Dr. Radcliffe assessed Plaintiff with hearing loss with vestibular disturbance of the right ear, osteoarthritis of the right shoulder, and osteoarthritis of the right knee.  (*Id.*)  Dr. Radcliffe reported that Plaintiff "gets headaches most days and these can be debilitating," and that "she feels down and depressed because of her lack of a diagnosis after two years dealing with this problem."  (*Id.*)  Plaintiff reported that she can walk for 10-15 minutes, stand for 10-15 minutes, and that she has difficulty sitting for long periods of time (maybe 10-15 minutes) before she has to change positions and move.  (*Id.*)  Dr. Radcliffe wrote that "[s]he is able still to do most activities of daily living and can cook and clean for herself but has considerable difficulty concentrating due to the hearing loss, balance issue and the headaches."  (*Id.*)  Dr. Radcliffe concluded that he thought Plaintiff "could do sedentary work physically if it were not for her

neurologic issue in relationship to the headaches and the balance problems she is having with her right ear.  As such I think it is difficult for her to do any sort of physical labor at this time." (*Id.*)

**B.      Timothy James Robert Rust, M.D.**

Plaintiff saw Timothy James Robert Rust, M.D., at OhioHealth Neurological Physicians, on July 29, 2015.  (R. at 344-360.)  During that visit, Plaintiff reported to Dr. Rust that she had had headaches for the previous eight months, and that they started with right ear pain and tinnitus in both ears, but there was no clear trigger for her symptoms.  (R. at 345.)  Plaintiff described her headache as a "crawling sensation over the right side of her head," and said that both ears felt heavy and she had an aching pain on the right side of her face.  (*Id.*)  Plaintiff reported to Dr. Rust that she took 1200mg of Ibuprofen, and Vicodin, three times a day.  (*Id.*)  Dr. Rust noted that "[t]hese symptoms are not typical for trigeminal or occipital neuralgia, but I think this may be a similar phenomenon," and wrote that plaintiff's differential diagnosis "includes geniculate neuralgia or other atypical facial pain syndrome."  (R. at 348.)  Dr. Rust suggested that Plaintiff "may also have a component of medication overuse headache," and recommended that Plaintiff stop taking Ibuprofen and Vicodin.  (*Id.*)  Dr. Rust prescribed Plaintiff with Gabapentin to help with her pain.  (*Id.*)  Dr. Rust also ordered an MRA of Plaintiff's head, which was normal.  (R. at 356.)

On November 19, 2015, Dr. Rust completed a form about Plaintiff's condition, and diagnosed Plaintiff atypical facial pain.  (R. at 362-363.)  Dr. Rust noted that his examination of Plaintiff was normal, diagnostic images were normal, and that Plaintiff was taking Gabapentin, but it was not helping.  (R. at 363.)  When asked to list what limitations impose on Plaintiff's ability to perform sustained work activity, Dr. Rust noted her "constant head pain." (*Id.*)

C.    **Qixin Sun, M.D.**

Plaintiff also sought various treatment from East Central Columbus Neighborhood Health Center ("East Central Health Center") between April 25, 2014 and December 7, 2015.  (R. at 365-397.)  At her first visit on April 25, 2014, Plaintiff was treated for bronchitis.  (R. at 394-395.)  On October 20, 2014, Plaintiff was treated for "ear problems," and was assessed with an acute respiratory infection, which Dr. Qixin Sun characterized as "most like[ly] viral."  (R. at 390-391.)  On November 11, 2014, Plaintiff returned with "ear problems," and was assessed with sinusitis and joint pain.  (R. at 388-389.)  On November 26, 2014, Plaintiff reported to Dr. Sun for a follow up appointment, and also reported neck and shoulder pain.  (R. at 386-387.)  On December 22, 2014, Plaintiff followed up with Dr. Sun about her joint pain and constant ear pain, and Dr. Sun assessed that Plaintiff had carpal tunnel syndrome and hearing loss.  (R. at 384-385.)  Between January 26, 2015 and December 7, 2015, Plaintiff returned for eight (8) visits, complaining of "ear problems," sinus issues, headaches, neck and shoulder pain, right shoulder pain (with limited range of motion).  Over the course of treatment, Dr. Sun ordered a variety of diagnostic imaging tests, and referred Plaintiffs to other specialists.  (R. at 365-397.)

D.    **Ashish Shah, M.D.**

Dr. Sun referred Plaintiff to Ashish Shah, M.D., of Ohio ENT & Allergy Physicians, and Plaintiff saw Dr. Shah for treatment on March 5, 2015 and April 7, 2015.  (R. at 331-333.)  On March 5, 2015, Plaintiff reported a "2-month history of bilateral otalgia with gradual hearing loss," as well as bilateral tinnitus, ear fullness, and significant headache problems.  (R. at 332.)  Dr. Shah noted that an audiogram "shows a moderate rising to mild sloping to moderately severe sensorineural hearing loss in the right ear between 1000 Hz," and normal hearing in the left ear.

(*Id.*) Dr. Shah concluded that "[t]he unilateral sensorineural hearing loss is unexplained," and he ordered an MRI. (*Id.*)

On March 16, 2015, Plaintiff underwent the MRI of her brain and internal auditory canals. (R. at 336.) On April 7, 2015, Plaintiff returned to Dr. Shah. (R. at 331.) Dr. Shah reviewed the MRI but found that it "was normal without any concerning findings." (*Id.*) Dr. Shah noted that Plaintiff had the option of a hearing aid, and concluded that he believed Plaintiff's headaches are leading to her otalgia. (*Id.*) Dr. Shah referred Plaintiff back to Dr. Sun for further neurologic evaluation. (*Id.*)

**E.      Lisa Richmond, M.A.**

On December 8, 2015, Plaintiff saw clinical audiologist Lisa A. Richmond, M.A., at Columbus Speech & Hearing Center. (R. at 339-343.) Ms. Richmond wrote an open letter that she had diagnosed Plaintiff with "normal hearing sensitivity in her left ear and mild mixed hearing loss in her right ear," and that she recommended that Plaintiff return to her otolaryngologist and consider a hearing aid in her right ear. (R. at 339.) Ms. Richmond noted that Plaintiff "is able to hear and understand conversation," but "[s]he may present some difficulty with speech clarity in the presence of background noise." (*Id.*) Ms. Richmond concluded that "[h]er hearing loss alone would not cause any work related functional limitations." (*Id.*)

**F.      State Agency Consultants**

State Agency consultant Gerald Klyop, M.D., reviewed Plaintiff's file on January 14, 2016, and provided assessments of Plaintiff's residual functional capacity. (R. at 79-89.) First, Dr. Klyop found that Plaintiff had four "severe" medically determinable impairments: spine disorders, hearing loss not treated with cochlear implantation, other and unspecified

8

arthropathies, and obesity.  (R. at 84.)  Dr. Klyop found that Plaintiff was only "partially credible," however, noting that "the intensity of the symptoms and their effects on functioning are not consistent with the totality of the evidence."  (R. at 84-85.)  Dr. Klyop contrasted Plaintiff's allegation of hearing loss in both ears to the testing that indicates "only mild hearing loss in the right ear," and concluded that "[t]herefore [Plaintiff's] statements are found to be only partially credible."  (R. at 85.)  Dr. Klyop reviewed Dr. Richmond's December 8, 2015 opinion and afforded it "controlling weight . . . as her report has testing that confirms her statements." (*Id.*)

Dr. Klyop found that Plaintiff has no exertional or postural limitations, but she is limited in reaching overhead to her right, due to limited range of motion and pain.  (*Id.*)  Dr. Klyop noted that Plaintiff "has some hearing loss in [her] right ear," that she "is able to understand and hear [and] understand conversation," but she "[m]ay present with some difficulty with speech clarify[ing] in the presence of background noise."  (R. at 86.)  Accordingly, Dr. Klyop said Plaintiff should avoid concentrated exposure to noise.  (*Id.*)  Dr. Klyop ultimately concluded that Plaintiff was not disabled, with the following explanation:

> You said you were disabled due to chronic headaches, lumbar strain and sprain, right shoulder injury, hearing loss in both ears, chronic ear pain, high blood pressure, chest pain, CTs in both hands, unexplained body pain, obesity, allergies, and a chronic cough. We reviewed the medical evidence and agree that these conditions do cause you pain and limitations. However they do not fully limit your ability to work. You are still able to work positions that do not require constant overhead lifting on [the] right side, and that have a quieter work environment. We do not have sufficient vocational evidence on file to determine if you have the ability to return to past work. However we have determined you have the ability to adjust to other relevant work. Under SSA's guidelines, you are found not disabled.

 (R. at 88.)

State Agency consultant Stephen Sutherland, M.D., reviewed Plaintiff's file at the reconsideration level on May 31, 2016, and agreed with most of Dr. Klyop's assessments.  (R. at

103-119.)  In addition to the four "severe" medically determinable impairments Dr. Klyop

identified for Plaintiff, however, Dr. Sutherland also found that Plaintiff's affective disorders

qualified as a "severe" medically determinable impairment.  (R. at 111.)  Dr. Sutherland found

Plaintiff to be "partially consistent," adopting Dr. Klyop's assessment but also adding that

Plaintiff's statements "are not fully consistent," noting that "[s]he states she is [in] so much pain

she has difficulty lifting a spoon to eat but is able to drive, tend to [activities of daily living],

[and] clean slowly."  (R. at 113.)  Like Dr. Klyop, Dr. Sutherland also adopted Dr. Richmond's

December 8, 2015 opinion and afforded it "controlling weight."  (*Id.*)

Unlike Dr. Klyop, Dr. Sutherland found that Plaintiff has exertional and postural

limitations.  (R. at 114-115.)  Specifically, Dr. Sutherland found that Plaintiff can occasionally

lift and/or carry up to 50 pounds, frequently lift and/or carry up to 25 pounds, stand and/or walk

(with normal breaks) for a total of about six hours in an eight hour workday, and sit (with normal

breaks) for a total of about six hours in an eight hour workday.  (R. at 114.)  Dr. Sutherland also

found that Plaintiff could only frequently climb ladders/ropes/scaffolds and balance.  (*Id.*)  Dr.

Sutherland adopted Dr. Klyop's manipulative, communicative, and environmental limitations for

Plaintiff.  (R. at 115-116.)  Dr. Sutherland also concluded that Plaintiff was not disabled, with the

following explanation:

> You said you are disabled due to chronic headaches, lumbar strain and sprain, right
> shoulder injury, hearing loss in both ears, chronic ear pain, high blood pressure,
> chest pain, CTs in both hands, unexplained body pain, obesity, allergies, and a
> chronic cough. The medical evidence shows a history of treatment for your
> conditions and some symptoms associated with depression. Despite your
> conditions, you are able to do many work activities that do not require heavy lifting
> over 50 pounds that is not overly loud. Your mental health does not significantly
> limit your ability to function to do daily activities.
>
> We do not have sufficient vocational evidence on file to determine if you have the
> ability to return to past work. However we have determined you have the ability to

adjust to other relevant work. Upon further review of the evidence, you do not meet
the medical eligibility requirements for benefits.

(R. at 118.)

## IV.  ADMINISTRATIVE DECISION

On November 23, 2018, the ALJ issued her decision.  (R. at 19-36.)  At step one of the

sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in any disqualifying

substantial gainful activity since June 6, 2015.  (R. at 22.)  At step two, the ALJ found that

Plaintiff has the following severe impairments:  hearing loss, right ear; tinnitus; headaches;

obesity and degenerative disc disease of the cervical spine.  (*Id.*)  The ALJ found that Plaintiff

did not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at

25.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?

2.   Does the claimant suffer from one or more severe impairments?

3.   Do the claimant's severe impairments, alone or in combination, meet or equal the
     criteria of an impairment set forth in the Commissioner's Listing of Impairments,
     20 C.F.R. Subpart P, Appendix 1?

4.   Considering the claimant's residual functional capacity, can the claimant
     perform his or her past relevant work?

5.   Considering the claimant's age, education, past work experience, and residual
     functional capacity, can the claimant perform other work available in the national
     economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster
v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, stoop, kneel, crouch, crawl and balance; never climb ladders, ropes or scaffolds; and must work in an environment rated "quiet" or "moderate" with respect to noise levels.

(R. at 25.)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. at 26.)

The ALJ addressed each of Plaintiff's impairments.  First, the ALJ discussed Plaintiff's hearing loss and pain, concluding that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent because they are not supported by the evidence of record."  (*Id.*)  The ALJ contrasted various objective evidence, including diagnostic tests which were generally "unremarkable" and "normal" and did not show that Plaintiff was in acute distress, with Plaintiff's "significant subjective complaints," and the ALJ found that "the evidence of record fails to substantiate the severity of the limitations [Plaintiff] alleged."  (R. at 26-27.)  The ALJ also noted that "[d]espite [Plaintiff's] complaints, she has received some relief with medication and clearing sinus drainage," and the ALJ observed that "although [Plaintiff] has sought medical care for the allegedly disabling symptoms, the treatment has been essentially routine and conservative in nature."  (R. at 27.)  Upon review of the evidence, the ALJ found that Plaintiff is capable of performing "a range of light work with additional postural limitations in an environment rated 'moderate' or 'quiet' with respect to noise level."  (*Id.*)  The ALJ also considered Plaintiff's obesity, but found that "[t]he evidence does not support greater limitation

12

in light of [Plaintiff's] generally normal physical examinations and testing results." (R. at 27-28.)

The ALJ also considered various opinion evidence. (R. at 28-29.) First, the ALJ considered the opinions of State agency medical consultants, Gerald Klyop, M.D., and Stephen Sutherland, M.D. (R. at 28.) The ALJ afforded these opinions "partial weight," finding Plaintiff was limited to a range of light work with further postural restrictions than the consultants opined "given her cervical spine degenerative disc disease and obesity," but the ALJ did not "find any basis to limit reaching specifically related to the right arm." (*Id.*) The ALJ also agreed with the consultants' limits on ambient noise because of Plaintiff's hearing loss, but she did not adopt their limits on "prolonged" background noise or avoiding multispeaker conversations, "because those terms are inconsistent with the Dictionary of Occupational Titles . . . and because [Plaintiff's] repeated audiometric testing results and demonstrated ability to hear conversational speech do not warrant greater limitations." (*Id.*)

The ALJ also considered the letter from clinical audiologist, Lisa Richmond, M.A. (*Id.*) The ALJ also gave Ms. Richmond's opinion "partial weight," noting that "[g]iven evidence of [Plaintiff's] right-sided hearing loss and subjective complaints of tinnitus, the record more accurately supports adopting noise limits because her subjective perception of her hearing loss could be worse with significant ambient noise." (*Id.*)

Next, the ALJ considered the opinion of consultative examiner, Dr. Radcliffe. (*Id.*) The ALJ afforded Dr. Radcliffe's opinion "little weight, as his opinion is not supported by or consistent with the objective medical findings of record." (*Id.*) The ALJ explained further:

> While Dr. Radcliff[e] noted the claimant to move slowly and walk with a limp, there [is] no mention of these behaviors elsewhere in her treating doctors' records. In fact, most of her physical exams are entirely normal with the exception of transient findings related to non-severe impairments. Dr. Radcliff[e] also found the

13

> claimant to have full strength. Dr. Radcliff[e] notes limited range of motion of the right knee and shoulder; however, these limits are not documented in any other records. Dr. Radcliff[e] also appears to give undue weight to the claimant's subjective hearing complaints as her treating sources have not found any evidence of significant, untreatable hearing loss. Overall, the record does not support the degree of limitation Dr. Radcliff[e] assessed.

(*Id.*)  The ALJ also considered the form completed and signed by Dr. Rust in November 2015, noting that "Dr. Rust saw [Plaintiff] once three months before completing the form and her exam at that time was normal," and concluding that "insofar as it can be considered an opinion," the form was entitled to "no weight as it is not supported by the medical evidence."  (R. at 29.) Considering all of the opinion evidence, the ALJ noted that Plaintiff's "complaints have not been completely dismissed, but rather, have been included in the residual functional capacity to the extent that they are consistent with the evidence as a whole."  (*Id.*)

Finally, relying on testimony from the VE, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, she can perform jobs that exist in significant numbers in the national economy, including office clerk and work order clerk.  (R. at 30.)  She therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 31.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

14

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

Plaintiff puts forth one assignment of error, arguing that the ALJ's decision did not properly take into consideration all of the opined limitations, "as weight to medical evidence was arbitrarily assigned without proper explanation."  (ECF No. 8 at PAGEID # 639.)  Specifically, Plaintiff argues that "[t]he ALJ both improperly discredited Dr. Radcliff[e]'s opinion, as well as failed to provide valid reasoning, supported by substantial evidence explaining why [s]he discredited certain opinions and why he completely omitted others."  (*Id.*)  Plaintiff argues that "[t]he ALJ's reasoning for discrediting Dr. Radcliff[e]'s evaluation of [Plaintiff] are based in

generalizations made by the ALJ" and Plaintiff challenges the ALJ's claim that Dr. Radcliffe

provided undue weight to Plaintiff's complaints of hearing loss.  (*Id.* at PAGEID # 640.)

The Commissioner responds that "the issue is whether the ALJ's decision was supported

by substantial evidence," and argues that "the ALJ cited substantial evidence supporting her RFC

findings, properly evaluated Dr. Radcliff[e]'s opinion, and set forth adequate reasons for

discounting it."  (ECF No. 13 at PAGEID # 654.)  The Commissioner argues that "[t]he ALJ

properly considered and discussed objective medical findings and observations in discounting

Dr. Radcliff[e]'s opinion and in determining Plaintiff's RFC," and that "Plaintiff has not

persuasively shown that the ALJ erred in conducting the difficult task of weighing the record

evidence."  (*Id.* at PAGEID ## 656-662.)

In reply, Plaintiff maintains that "[t]he ALJ improperly gave little weight to Dr.

Radcliffe's opinion," and that "[t]he ALJ's evaluation of Dr. Radcliffe's findings are inconsistent

with the record, as these findings are clearly supported by the findings of other medical

professionals."  (*See generally* ECF No. 14.)

As a preliminary matter, the determination of a claimant's RFC is an issue reserved to the

Commissioner.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Nevertheless, substantial evidence must

support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983,

at *8 (S.D. Ohio June 18, 2010).  An ALJ must explain how the evidence supports the limitations

that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations). In
> assessing RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and
> describe the maximum amount of each work-related activity the individual can
> perform based on the evidence available in the case record. The adjudicator must

16

also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted).

In addition, the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1); *see also* SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). Like other medical source opinions, the ALJ must consider state agency medical opinions. *See* 20 C.F.R. § 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996) (administrative law judges are required to consider state agency medical "findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and Appeals Council are not bound by findings made by State agency . . . but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

17

and the specialization of the source. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (state-agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act"; thus, in some cases, "an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating or examining source.") (first alteration in original) (internal quotation marks omitted); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

Here, Plaintiff generally argues that the ALJ arbitrarily assigned "little weight" to Dr. Radcliffe's opinion without proper explanation. (*See* ECF No. 8 at PAGEID ## 639-644.) "[T]here is no regulatory requirement that an ALJ adopt every facet of a particular medical opinion in formulating an RFC, so long as the record as a whole supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review." *Kincaid v. Comm'r of Soc. Sec.*, No. 1:16-CV-736, 2017 WL 9515966, at *3 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 1:16CV736, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017). A disagreement with how the ALJ decided to weigh differing medical opinions "is clearly not a basis for . . . setting aside the ALJ's factual findings." *Id.* (citing *Mullins v. Sec'y of Health & Hum. Servs.*, 836 F.2d 980, 984 (6th Cir. 1987)). Plaintiff argues that the ALJ failed to adequately explain her analysis in a manner sufficient to allow review.

Plaintiff's argument is not well taken.  The Undersigned finds both that the ALJ sufficiently explained why she weighed Dr. Radcliffe's opinion the way she did, and that the ALJ's findings were supported by substantial evidence.  The Court first turns to the ALJ's analysis of Dr. Radcliffe's opinion, as it serves as the basis for Plaintiff's objection:

> I have also considered the opinion of consultative examiner, Dr. Radcliff[e]. Dr. Radcliff[e] opined that the claimant was limited to a range of sedentary work. I afford Dr. Radcliff[e]'s opinion little weight as his opinion is not supported by or consistent with the objective medical findings of record. While Dr. Radcliff[e] noted the claimant to move slowly and walk with a limp, there no mention of these behaviors elsewhere in her treating doctors' records. In fact, most of her physical exams are entirely normal with the exception of transient findings related to non-severe impairments. Dr. Radcliff[e] also found the claimant to have full strength. Dr. Radcliff[e] notes limited range of motion of the right knee and shoulder; however, these limits are not documented in any other records. Dr. Radcliff[e] also appears to give undue weight to the claimant's subjective hearing complaints as her treating sources have not found any evidence of significant, untreatable hearing loss. Overall, the record does not support the degree of limitation Dr. Radcliff[e] assessed.

(R. at 28 (internal citation omitted).)  The Court finds that this explanation is sufficient, as the ALJ set forth three specific ways in which Dr. Radcliffe's opinion was "not supported by or consistent with the objective medical findings of record":  (1) Dr. Radcliffe's note that Plaintiff walked with a limp was not supported by the medical findings of record; (2) Dr. Radcliffe's note that Plaintiff had limited range of motion in her right knee and shoulder was not supported by the medical findings of record: and (3) Dr. Radcliffe's opinion about Plaintiff's subjective hearing complaints was not supported by the medical findings of record.  (*Id.*)  The Court will address each of these reasons in turn.

First, Plaintiff appears to affirmatively concede that "there is no specific mention in the record that directly mentions a limp" and "the record does not explicitly suggest a history of limping."  (ECF No. 8 at PAGEID ## 641-642.)  Rather, Plaintiff cites other record evidence, including a medical record referencing Plaintiff's carpal tunnel syndrome, to argue that "there

are very clear medically supported physical limitations that can affect [Plaintiff's] ability to walk," so "it would be inappropriate to strike down the opinion of Dr. Radcliff[e] because [the limp] was not clearly mentioned, especially when a limp is not the disability disqualifying [Plaintiff] from work."  (*Id.* at PAGEID # 642.)  The Court rejects this argument.  The ALJ stated she afforded Dr. Radcliffe's opinion "little weight," in part because Dr. Radcliffe noted a limp which the ALJ found to be inconsistent with the record evidence.  Plaintiff is wrong to suggest that it was inappropriate for the ALJ to grant little weight[3] to an opinion based, at least in part, on an observation that Plaintiff affirmatively concedes is unsupported by the medical record evidence.  This is especially so given that the ALJ also referenced substantial evidence that "most of [Plaintiff's] exams are entirely normal with the exception of transient findings related to non-severe impairments," and that "Dr. Radcliff[e] also found the claimant to have full strength." (R. at 28.)  Indeed, an ALJ properly discounts a medical opinion if it is inconsistent with other substantial evidence.  *See* 20 C.F.R. § 441.1527(d)(4) (noting ALJ is required to determine weight that should be accorded to a medical opinion by considering, *inter alia*, the consistency of the opinion with the record); Blakley, 581 F.3d at 406; *Hixon v. Astrue*, No. 3:08-cv-288, 2009 WL 2195418, *11 (6th Cir. July 23, 2009) (holding ALJ properly afforded little weight to an opinion that was inconsistent with the record as a whole).

To that end, the Court also rejects Plaintiff's second argument, that it is "logically inconsistent and false" for the ALJ to state that "Dr. Radcliff[e] also found [Plaintiff] to have full strength" when testing revealed that Plaintiff had limited range of motion in her shoulder and right knee.  (ECF No. 8 at PAGEID ## 642-643.)  Plaintiff is correct that Dr. Radcliffe did not

---

[3] The Court notes that the ALJ did not afford "no weight" to Dr. Radcliffe's opinion, as the ALJ did to Dr. Rust's November 2015 form.  (*See* R. at 29.)

20

write that Plaintiff had "full strength," but the Commissioner correctly directs the Court to the Manual Muscle Testing form Dr. Radcliffe completed for Plaintiff.  (R. at 402-405.)  In that form, Dr. Radcliffe found that Plaintiff had "Normal" (5/5) muscle testing for her entire body (e.g., shoulders, elbows, wrists, fingers, hips, knees, feet, and toes), except she had "Good" (4/5) muscle testing for her right shoulder.  (R. at 402.)  Dr. Radcliffe also observed normal range of motion for Plaintiff's entire body except her right shoulder and right knee.  (R. at 403-404.)  While the ALJ did misquote Dr. Radcliffe, the ALJ did not misinterpret or misrepresent Dr. Radcliffe's examination of Plaintiff.  It is entirely proper, and not "logically inconsistent," for the ALJ to have taken note of both Dr. Radcliffe's  "Normal" and "Good" strength findings for Plaintiff, and Dr. Radcliffe's limited range of motion findings for Plaintiff.

Finally, Plaintiff argues that because the ALJ "felt Dr. Radcliff[e] was giving too much credit to [Plaintff's] reports of hearing loss," that was essentially "to suggest that there is no medical evidence supporting Dr. Radcliff[e]'s evaluation of [Plaintiff's] hearing loss."  (ECF No. 8 at PAGEID # 643.)  Plaintiff misapprehends the ALJ's decision.  Plaintiff need only to look at the ALJ's RFC to see that the ALJ recognized that Plaintiff has hearing problems, as the ALJ's determination to limit Plaintiff to working "in an environment rated 'quiet' or 'moderate' with respect to noise levels."  (R. at 25.)  As it related to Dr. Radcliffe, the ALJ merely concluded that "Dr. Radcliff[e] also appears to give undue weight to the claimant's subjective hearing complaints **as her treating sources have not found any evidence of significant, untreatable hearing loss**."  (R. at 28 (emphasis added).)  In response, Plaintiff does not point to any evidence of significant, untreatable hearing loss.  The ALJ, on the other hand, went to great lengths to detail the subjective and objective evidence regarding Plaintiff's alleged hearing loss:

> While the claimant is shown to have some hearing loss and tinnitus, the evidence of record fails to substantiate the severity of the limitations the claimant alleged.

21

Audiological evaluation results from July 2015 confirmed normal hearing sensitivity in the claimant's left ear and mild mixed hearing loss in her right ear. The claimant was advised to consider a hearing aid as it "could easily correct her hearing issues even in the presence of background noise". During examination with consultative examiner, Benjamin Radcliff[e], M.D., in May 2016, the claimant exhibited diminished function of cranial nerve VIII on the right and was noted to hold on to things when she turned. Based on his exam, Dr. Radcliff[e] diagnosed the claimant with hearing loss with vestibular disturbance of the right ear. Nonetheless, an audiogram performed in August 2017 showed word recognition scores of 100 percent in both ears. The claimant had normal hearing in the left ear and moderate sensorineural hearing loss in right ear with complaints of tinnitus. Despite her hearing deficit, the claimant exhibited no difficulty during a telephone interview with a field office employee to complete her initial disability application. At the psychological consultative examination, there was nothing remarkable about the claimant's receptive or expressive speech or language functioning. Finally, the claimant attended to the hearing proceedings closely and fully without any noted hearing difficulty.

The claimant does have an underlying medically determinable impairment that could reasonably cause at least some of the type of pain and symptoms alleged. However, a careful review of the record does not reveal sufficient objective medical evidence to confirm the degree of functional limitations alleged. The objective evidence does not document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such severity or frequency to preclude the range of work described in the residual functional capacity adopted herein. Despite the claimant's complaints, she has received some relief with medication and clearing sinus drainage. While she may experience a degree of symptoms, physical examination findings do not support the claimant's allegations as they have been relatively normal. Moreover, although the claimant has sought medical care for the allegedly disabling symptoms, the treatment has been essentially routine and conservative in nature.

(R. at 27 (internal citations omitted).)  Against this backdrop, it was reasonable for the ALJ to reach the conclusion she did, as it was supported by substantial evidence.

Accordingly, the Court finds that the ALJ adequately explained her analysis of Dr. Radcliffe's opinion in a manner sufficient to allow review, and that substantial evidence supports the ALJ's RFC finding.  After considering the entire record, including not only the two State Agency consultants' opinions but also the opinions of clinical audiologist Lisa Richmond, M.A.,

Dr. Radcliffe, and Dr. Rust, the ALJ cited substantial evidence in concluding that Plaintiff is capable of light work with certain restrictions to accommodate her impairments.  (R. at 19-36.)

To be clear, an ALJ is not required to mirror or parrot medical opinions verbatim.  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  And where, as here, an ALJ has accorded an opinion only "little weight," the ALJ need not include all of the limitations in the RFC or even discuss why certain limitations have been omitted.  While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for the RFC determination as it relates to Dr. Radcliffe's proposed limitations, and this explanation enjoys substantial support in the record.  *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")).  Under these circumstances, the Court finds no merit to Plaintiff's statement of error.

For these reasons, it is **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED**, and the Commissioner's decision be **AFFIRMED**.

## VII.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: January 27, 2021                  */s/ Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**